UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**UNITED STATES OF AMERICA**

v().  Case No. 8:24-cr-198-MSS-AEP

**BUDDY ALLEN TRAVIS**

_____/

**SENTENCING MEMORANDUM IN SUPPORT OF
<u>180-MONTH SENTENCE</u>**

COMES NOW, the Defendant, BUDDY ALLEN TRAVIS, through undersigned counsel and pursuant to 18 U.S.C. § 3553(a), files this Sentencing Memorandum supporting his request for this Court to downward vary 1 ½ levels and impose a sentence of 180 months followed by a reasonable term of sexual offender supervised release with the special condition that Mr. Travis receive substance abuse and mental health treatment.[1] As grounds in support, Mr. Travis shows:

**FACTUAL AND PROCEDURAL HISTORY**

Mr. Travis (age 42) is a nonviolent offender who, after entering guilty pleas

---

[1] Because Mr. Travis has entered a guilty plea to Count Two of the indictment, which charges him with production of child pornography under 18 U.S.C. § 2251(a) and (e), he is facing a 15-year minimum mandatory penalty, thus preventing this Court from imposing a term of imprisonment less than 180 months. PSR ¶¶7, 105.

1

to production and receipt of child pornography, is before this Court seeking a 15-year term of imprisonment, over 14 years longer than any prior term of imprisonment he has ever served. PSR ¶¶1-4, 7, 44-55. Given the history and characteristics of Mr. Travis, the facts and circumstances of his offense, and the low risk of him reoffending, a sentence of 180 months (15 years) is sufficient but not greater than necessary to accomplish the 18 U.S.C. § 3553(a) purposes of sentencing.[2]

### *History and Characteristics of Buddy Allen Travis*

Buddy Allen Travis was born on October 7, 1982, in Bradenton, Florida to Marilyn Lyons and Allen Travis. PSR ¶68. Mr. Travis was raised in a lower to middle class family, where his mother worked as a long-distance truck driver and his father earned a living repairing residential HVAC units. PSR ¶¶68, 70, 73. When Mr. Travis was five years old his parents separated and eventually divorced. PSR ¶68; *Dr. Imhof's Report*, p. 1.

Because of their work obligations, Mr. Travis's parents were rarely home, and after their separation, Mr. Travis was left in the care of his father who lived in a

---

[2] A recent psychosexual evaluation has determined that Mr. Travis, with appropriate mental health and substance abuse treatment, presents a low risk of reoffending, with only a 4.6% risk of reoffending post-release after 5 years, 7.2% after 10 years, and 8.9% after 20 years. *See* Dr. Imhof's December 27, 2024 Report, p. 5, which has been filed separately under seal with this Court, and will be referred to hereafter as, *Dr. Imhof's Report*.

small rural area of Gilchrist County, Florida. PSR ¶70. Mr. Travis's mother, due to her employment-related travel, played a less active role in Mr. Travis's young life. PSR ¶69. With his father also working long hours, Mr. Travis mainly was raised by his paternal grandparents who lived next door. PSR ¶70.

When Mr. Travis was in the sixth grade, his father began a romantic relationship with a significantly younger women in her early 20's, who eventually became Mr. Travis's stepmother. PSR ¶71; *Dr. Imhof's Report*, p. 1. Given his stepmother's age-related immaturity, Mr. Travis's relationship with his father and stepmother was strained. *Id.*[3] Because of this tense parental relationship, when Mr. Travis was 11, he moved in with his mother and her new husband, Kenneth Ott, a strict former Marine. PSR ¶¶69, 71; *Dr. Imhof's Report*, p. 1.

Despite the change in parental custody, Mr. Travis continued to spend significant time with his paternal grandparents with whom he had formed a strong emotional bond. PSR ¶82. Mr. Travis was emotionally devastated when his grandparents passed away, which happened while he was in high school. *Id.*; *Dr. Imhof's Report*, p. 3. Out of concern for his mental health, Mr. Travis's mother sent him to a therapist who prescribed Mr. Travis Wellbutrin, an antidepressant

---

[3] Mr. Travis has not visited his father since 2017, and their relationship remains strained. *Dr. Imhof's Report*, p. 2.

3

medication. *Id*. Due to its adverse side effects, after a short period of use, Mr. Travis stopped taking his prescribed antidepressant medication. *Id*. Since high school, Mr. Travis has struggled with debilitating depression, which has led to suicidal ideation and a 2022 suicide attempt. PSR ¶¶82-85.[4]

Along with his mental health struggles, while in school, Mr. Travis was often bullied, for as Mr. Travis describes it "just being me." PSR ¶91; *Dr. Imhof's Report*, p. 2. In response to being targeted by school bullies, Mr. Travis experienced self-mutilatory ideation and would cut himself with a sharp metal ruler. *Dr. Imhof's Report*, p. 4. Despite the bullying, difficulties at home, and emotional struggles, he avoided contacts with the juvenile justice system and found refuge by participating in his school's ROTC program, where he was a member of the drill team, color guard, and assisted with security at school events. PSR ¶44: *Dr. Imhof's Report*, p. 2.[5]

To cope with his childhood struggles, Mr. Travis experimented with alcohol

---

[4] Despite struggling with severe depression for most of his life, other than seeing a therapist for a brief period while in high school, Mr. Travis has never attended any other form of mental health treatment. PSR ¶85. Mr. Travis is receptive to receiving mental health treatment at part of his sentence. *Id*.

[5] Mr. Travis's positive ROTC experience contributed to his decision to join the U.S. Army Reserves. PSR ¶103; *Dr. Imhof Report*, p. 2.

and marijuana use and was expelled in the 12th grade for having alcohol during a school field trip. PSR ¶87; *Dr. Imhof's Report*, p. 2. As Mr. Travis progressed into adulthood and his depression worsened, his controlled substance experimentation developed into an out-of-control polysubstance addiction, with his most significant usage during his deepest bouts of depression. *Id*.

By the time of his federal arrest, Mr. Travis was deeply depressed, was drinking a pint of liquor and/or six 24 ounce "tall boys" of beer a day and was smoking marijuana three to four times per day. *Id*. On top of this, as an adult, Mr. Travis abused MDMA, LSD, and Inhalants (20 to 25 times); crack cocaine (20 times); methamphetamine (3-4 times a day between 2010 and 2015); and heroin twice; his heaviest alcohol and drug use always occurred when he found himself in an emotionally "bad place." PSR ¶88; *Dr. Imhof's Report*, p. 3.

Despite Mr. Travis's teenage depression and related substance use, after leaving high school he successfully passed the GED and was issued a standard diploma because he had the required course credits. PSR ¶91; *Dr. Imhof's Report*, p. 2. Two years later, on September 7, 2003, Mr. Travis married Amanda Mae Tackett. PSR ¶75; *Dr. Imhof's Report*, p. 2. Mr. Travis's marriage lasted 6 years, eventually ending in divorce on June 6, 2009, due to his wife's infidelity. *Id*. Mr. Travis's marriage produced two daughters, Leila Ann Travis (age 19) and Oliva

Travis (age 17). *Id*. Following his failed marriage, Mr. Travis struggled emotionally and began to self-harm again by repeatedly cutting his legs and arms with a knife or other sharp objects. PSR ¶84. Together with the self-harming behavior, Mr. Travis's substance use accelerated between 2010 and 2015 into daily stimulant (crack cocaine/methamphetamine) substance abuse in a misguided attempt to improve his depressive state. PSR ¶88.

As Mr. Travis's depression and substance abuse increased, he began to have contacts with the criminal justice system related to his substance abuse. PSR ¶¶45-55. Within a year of his divorce, while intoxicated, Mr. Travis had his first contact with the criminal justice system when he and a male friend jokingly set a trash dumpster behind a hotel on fire, resulting in Mr. Travis and his friend being charged with and convicted of criminal mischief. *Id*.

From ages 29 to 34, Mr. Travis was arrested and convicted of a host of other drug and alcohol related offenses including criminal mischief, alcohol related reckless driving, grand theft, petit theft, possession of an anti-shoplifting device, possession of drug paraphernalia (3 times), and possession of personal use quantities of methamphetamine (3 times). PSR ¶¶46-55. Given the minor nature of Mr. Travis's nonviolent and drug and alcohol related offense conduct he typically received probation or short county jail sentences; the longest term of incarceration

6

was on October 27, 2017, when he was sentenced to the county jail for 11 months, 29 days for violating his state probation after he was convicted for possessing a personal use quantity of methamphetamine. PSR ¶¶53-54. Besides causing brief periods of incarceration, Mr. Travis's mental health and substance abuse struggles also caused him to repeatedly lose his driving privileges, has had difficulty maintaining employment,[6] and his substance abuse has strained his relationships with his daughters. PSR ¶¶88, 103.

In September 2022, following an argument with his oldest daughter over his excessive alcohol consumption, Mr. Travis found himself in the lowest place in his life. PSR ¶83. The strained relationship with his daughter contributed to Mr. Travis acting on his suicidal thoughts by attempting to kill himself by riding his bicycle into an oncoming truck. PSR ¶83; *Dr. Imhof's Report*, p. 4.[7]

---

[6] Mr. Travis served in the U.S. Army Reserves for three years as a 55B ammunition specialist and has held sporadic employment with his father's HVAC business (2016 to 2018); he has also sold collectables on eBay (2018 to 2019), operated carnival rides (2020 to 2021), worked the food service industry (2020 to 2021), and held a job at an Amazon Distribution center (2022 to 2023). PSR ¶¶96-100, 103. Mr. Travis was discharged from the U.S. Army Reserves after testing positive for marijuana. PSR ¶103; *Dr. Imhof's Report*, p. 2.

[7] Mr. Travis suffers from Persistent Depressive Disorder, early onset, with intermittent major depressive disorder, Generalized Anxiety Disorder with Panic Attacks, Alcohol Use Disorder, severe, and Stimulant Use Disorder, severe. *See Dr. Imhof's Report*, p. 10.

While Mr. Travis survived his suicide attempt, his life continued to spiral out of control as he continued to engage in self-destructive behavior, including the behavior that brings him before this Court for sentencing. *Id.* [8] Following his September 2022 suicide attempt, a friend of Mr. Travis's who resided in California, invited him to live with him, hoping that a change in scenery would lift his emotional state. PSR ¶76. At the behest of his friend, Mr. Travis moved to California where he took up residence on his friend's sofa. *Id*. The move had the opposite effect, and while in California Mr. Travis fell deeper into his depression and self-destructive behavior, contributing to his January 1, 2023 arrest for public intoxication as well as the inappropriate online criminal activity that brings him before this Court for sentencing.

### *Facts and Circumstances of the Offense*

While in California, still deeply depressed and heavily intoxicated, and having never previously engaged in inappropriate sexual contact with a minor, Mr. Travis began an online relationship with a friend of his post-puberty 14-year-old daughter,

---

[8] Recent testing has found that Mr. Travis continues to experience "significant emotional distress," is experiencing "significant demoralization, feeling overwhelmed, and being extremely unhappy, sad, and dissatisfied with his life," and is "experiencing generalized anxiety with panic inducing intrusive ideation and nightmares." *See Dr. Imhof's Report*, p. 5.

8

L.F. PSR ¶¶15-16. Over a three-month period (March 2023 to June 2023), Mr. Travis and L.F. engaged in conversations over Facebook messenger, with several of their conversations becoming sexual.[9] PSR ¶16, 20.

At all times, Mr. Travis was residing in California and L.F. was residing in the Middle District of Florida; there was never in-person contact between L.F. and Mr. Travis, sexual or otherwise. PSR ¶15. It is clear from the text of their communications that Mr. Travis was heavily intoxicated during many, if not all, of their sexual communications and that his significant depression related mental health conditions were driving his inappropriate conduct. *Id*.

During their communications Mr. Travis transmitted to L.F. images of his erect penis and one video of himself masturbating. PSR ¶16. In return, L.F. sent to Mr. Travis images some clothed and others where her post-puberty breast or vagina were exposed. *Id*. L.F.'s parents discovered the inappropriate communications she was having online with adult males, including Mr. Travis, and reported the conduct to law enforcement. Based on Mr. Travis's and L.F.'s inappropriate communications, on May 2, 2024, Mr. Travis was indicted and charged by a Tampa

---

[9] Unknown to Mr. Travis, at the time he was communicating with L.F., she was also communicating with at least one other adult male in similarly sexual communications.

grand jury with enticement of a minor to engage in sexual activity, production of child pornography, receipt of child pornography, and transfer of obscene material to a minor. PSR ¶¶1-5.[10]

On May 14, 2024, while still residing in California, Mr. Travis was arrested. PSR ¶26. His cell phone was seized and subsequently searched, and his Facebook records were similarly obtained and reviewed by law enforcement. PSR ¶¶17, 26. Despite an exhaustive search by federal authorities, no evidence was discovered that Mr. Travis had ever previously communicated with other minors, nor was he found in possession of any child pornography images other than images L.F. had transmitted to him. *Id*. And there is no evidence that Mr. Travis ever distributed the images he received from L.F. *Id.*

On October 1, 2024, Mr. Travis accepted responsibility for his unlawful conduct and entered a guilty plea to Count Two and Three of the Indictment, which charged him with production and receipt of child pornography. PSR ¶7. The production of child pornography offense carries a 15-year minimum mandatory penalty, thus restricting this Court's authority to impose a sentence less than 180

---

[10] The sexual activity Mr. Travis enticed L.F. to engage in was her act of taking nude photos of herself and transmitting them over the internet to him. PSR ¶16.

months. PSR ¶106. On October 21, 2024, this Court accepted Mr. Travis's guilty plea and adjudicated him guilty. PSR ¶7. His sentencing hearing is scheduled for February 4, 2025, at 9:30 a.m. Doc. 38.

## GUIDELINE CALCULATIONS

Mr. Travis's properly calculated guidelines result in a total offense level of 33. PSR ¶¶32-42. Despite having never previously received a sentence of imprisonment greater than a year and having no prior violent or sexual related convictions, Mr. Travis has 10 criminal history points and is a criminal history category V offender. PSR ¶¶45-57. With a total offense level of 33 and a criminal history category V, Mr. Travis's advisory guideline imprisonment range is 210 to 262 months (17 years, 6 months to 21 years, 10 months). PSR ¶106.

Mr. Travis seeks a 1 ½ level downward variance, which would result in a total offense level of 31, an advisory guideline range of 168 to 210 months, and the imposition of a middle of the guidelines sentence of 180 months (*i.e.*, the 15-year minimum mandatory penalty).

## A 1 ½ LEVEL DOWNWARD VARIANCE AND THE IMPOSITION OF A 15-YEAR TERM OF IMPRISONMENT IS REASONABLE

As this Court is aware, all federal sentences should be "sufficient but not greater than necessary." 18 U.S.C. § 3553(a). They should fit the crime, provide for

"adequate deterrence," "protect the public," and promote rehabilitation. 18 U.S.C. § 3553(a)(2). Given the history and characteristics of Mr. Travis, including his low risk for post-release reoffending, and the facts and circumstances surrounding his offense conduct, a 15-year term of imprisonment followed by at least 5 years of sexual offender community supervision will be "sufficient but not greater the necessary" to accomplish the §3553(a) purposes of sentencing.[11]

Mr. Travis is respectfully requesting a lengthy term of imprisonment of 180-months, which can be accomplished through a modest 1½ level downward variance. The 18 U.S.C. § 3553(a) factors warranting this 1 ½ level downward variance include Mr. Travis's age, mental health condition, difficult childhood, lack of any prior similar offense conduct, the role his depression and substance abuse played in his offense conduct, and his low risk for post-release reoffending. Any sentence higher than 180 months is greater than necessary to accomplish the purposes of sentencing.

A 15-year sentence for a 42-year-old individual who has never previously served a term of imprisonment greater than 12 months is a significant and severe punishment, especially coupled with the restrictive sex offender related conditions

---

[11] Pursuant to 18 U.S.C. § 3583(k), this Court shall impose a term of supervised release of at least five years and may impose a term up to life. PSR ¶108.

12

that will be imposed with his supervised release. Statistically, as explained by Dr. Imhof, with appropriate mental health and substance abuse treatment, Mr. Travis's likelihood of reoffending is low with only a 4.6% risk of reoffending post-release after 5 years, 7.2% after 10 years, and 8.9% after 20 years. *See Dr. Imhof's Report*, p. 6

As further noted by Dr. Imhof, Mr. Travis does not suffer from a Paraphilic Disorder and thus sex offender treatment is not suggested. *Dr. Imhof's Report*, p. 9. Mr. Travis has never had hands-on sexual contact with a minor nor, as shown by the search of his electronic devices, does he have a predisposition to collect and view images of child pornography.[12] Mr. Travis has also never engaged in other online contact with minors outside the victim here. While Mr. Travis's inappropriate and unlawful online activity with L.F. is reprehensible and indefensible, his conduct was an isolated incident driven more by his depression and substance abuse than any predatory sexual desire toward minor females or to produce and collect child pornography. *Dr. Imhof's Report*, pp. 9-10.

The images received by Mr. Travis from L.F. were never distributed and as

---

[12] *See* Attachment A, *Polygraph Examination Report*, finding Mr. Travis truthful when he stated during examination that he had never previously had unlawful sexual contact with a minor.

opined by Dr. Imhof, while Mr. Travis needs both substance abuse and mental health counseling, he does not need sex offender treatment. *Id.* Becoming a convicted sex offender, receiving a term of supervised release with sex offender restrictions, and being subject to stringent state and federal sex offender registration requirements (including restrictions on residence, place of employment, and internet use) are significant penalties.

When one combines these already punitive and restrictive community-based penalties with the prospect of Mr. Travis serving a 15-year term of federal imprisonment, which will mark the first time he has ever served a jail sentence greater than 12 months, it becomes evident that a term of imprisonment more than 15 years is simply "greater than necessary." A term of imprisonment of 15 years is also punitive enough to foster respectful for the law, to reflect the seriousness of the offense, and to punish Mr. Travis's non-in-person-contact child pornography receipt and production offense. Similarly, incarcerating Mr. Travis for 15 years followed by a term of sexual offender related community supervision of at least 5 years will specifically deter Mr. Travis and others generally, while protecting the community. Mr. Travis is statistically unlikely to reoffend and there is no empirical evidence that a sentence greater than 15 years will have any more deterrent affect specifically or generally.

14

WHEREFORE, the Defendant, BUDDY ALLEN TRAVIS, respectfully moves this Honorable Court to downward vary 1 ½ levels and impose a sentence of 180 months followed by a reasonable term of sexual offender supervised release of at least 5 years with the special condition that Mr. Travis receive substance abuse and mental health treatment.

DATED this 21st day of January 2025.

        Respectfully submitted,

        A. FITZGERALD HALL, Esq.
        FEDERAL DEFENDER

        */s/ Adam B. Allen*
        Adam B. Allen, Esq.
        Assistant Federal Defender
        Florida Bar No. 0998184
        Office of the Federal Defender
        400 North Tampa Street
        Suite 2700
        Tampa, Florida 33602
        Telephone: (813) 228-2715
        Facsimile: (813) 228-2562
        Email: Adam_Allen@fd.org

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 21st day of January 2025, a true and correct copy of the above was furnished by the CM/ECF system with the Clerk of the Court, which will send a notice of the electronic filing to:

AUSA Courtney Derry

*/s/ Adam B. Allen*
Adam B. Allen, Esq.
Assistant Federal Defender
